UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

```
FILED BY_____D.C.

APR 26 2019

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FT. LAUD.
```

UNITED STATES OF AMERICA, *ex rel.*    :
WILLIAM ZUBKOFF, JOYCE GALBUT,
and HENRY MATOS,    :

        Plaintiffs,    :

v.    :

PLAZA HEALTH NETWORK a/k/a    :
HEBREW HOMES HEALTH NETWORK, INC.;
HEBREW HOMES MANAGEMENT SERVICES, :
INC.; HEBREW HOME OF NORTH DADE, INC.,
d/b/a AVENTURA PLAZA REHABILITATION    :
& NURSING CENTER; ARCH PLAZA, INC.
d/b/a ARCH PLAZA NURSING &    :
REHABILITATION CENTER; HEBREW HOME
OF SOUTH BEACH, INC., d/b/a HEBREW    :
HOME OF SOUTH BEACH; JACKSON PLAZA,
INC., d/b/a JACKSON PLAZA NURSING AND    :
REHABILITATION CENTER; PONCE PLAZA
INC., d/b/a PONCE PLAZA NURSING AND    :
REHABILITATION CENTER; UNIVERSITY
PLAZA REHABILITATION AND NURSING    :
CENTER, INC. d/b/a UNIVERSITY PLAZA;
SOUTH BEACH NURSING AND    :
REHABILITATION CENTER, INC., d/b/a
SOUTH POINTE PLAZA; HEBREW HOME    :
SINAI, INC., d/b/a SINAI PLAZA NURSING AND
REHABILITATION CENTER; PLAZA NORTH, :
INC.; PALMS CONVALESCENT CARE, INC.;
CRESCENT HEIGHTS; HEBREW HOMES    :
CAPTIVE SERVICES, INC.; POLARIS
PHARMACY SERVICES, LLC ; POLARIS    :
PHARMACY SERVICES OF TAMPA, LLC;
RUSSELL GALBUT, ABRAHAM GALBUT,    :
and RONALD LOWY, in their individual
capacities,    :

        Defendants.    :

---------------------------------------------------------------/

**COMPLAINT
OF RELATORS**

**FILED UNDER SEAL
PURSUANT TO
31 U.S.C. § 3730(b)(2)**

19-cv-21619 CMA

JURY TRIAL DEMANDED

Plaintiff-Relators Dr. William Zubkoff, Joyce Galbut, and Henry Matos, by their undersigned counsel, file this Complaint on behalf of the United States of America, alleging as follows:

## PRELIMINARY STATEMENT

1.      Plaintiff-relators bring this action seeking treble damages and penalties against Hebrew Homes Health Network, Inc., a network of nursing homes in South Florida, and their controlling chairman/owner, Russell Galbut and others affiliated with him, and related entities (collectively "Defendants") under the False Claims Act, 31 U.S.C. §§ 3729, *et seq.* ("FCA"), and the Florida False Claims Act, Fla. Stat. §§ 68.081-68.09, based on Defendants' knowing and fraudulent scheme to defraud Medicare and Medicaid by submitting false claims based on kickbacks; failing to disclose transactions with related parties, as required by Medicare and Medicaid regulations; and billing Medicare and Medicaid for fictitious and inflated costs.  By submitting these false claims, Defendants illegally obtained millions of dollars from the federal government and the State of Florida that they used to finance their vast real estate empire and other businesses on the backs of elderly, low-income, and frail nursing home residents.

2.      Hebrew Homes Health Network is the largest not-for-profit teaching nursing home network in Miami-Dade County, operating between six and eight skilled nursing facilities in South Florida during the time-period relevant to this Complaint.  The network of homes is run by its controlling chairman/owner Russell Galbut and his family as a piggybank funded by false claims to government health care programs based on kickbacks, undisclosed related party transactions and fictitious and inflated costs, as further discussed below.  Russell Galbut and his family members and close associates used Medicare and Medicaid not just to fund his not-for-profit

nursing homes, but also his for-profit nursing homes, his real estate empire, and other businesses in which he and his family members were involved.

3.     Russell Galbut, his brother Abraham Galbut, and their family members and close associates violated the Anti-Kickback Statute, 42 U.S.C. §1320a-7b(b) ("AKS"), the False Claims Act, and the Florida False Claims Act, by billing Medicare and Medicaid for drugs and other supplies purchased by the nursing homes in the Network for their residents from a pharmacy wholly owned and operated by Russell Galbut, his family and close associates. The sole business of the pharmacy, Defendant Polaris Pharmacy Services, Inc. ("Polaris") is to supply drugs, at inflated prices, to residents of the Network nursing homes. This sale and purchase of the drugs by these nursing homes from a related-party pharmacy was not disclosed to the government and the government was charged exorbitant prices for the drugs. In 2016 alone, Defendants billed the government millions of dollars for drugs based on these illegal kickbacks.

4.     Defendants also defrauded Medicare and Medicaid by billing for millions of dollars in costs of their wholly-owned captive insurance company, Hebrew Homes Captive Services, Inc., which were unrelated to the insurance services purportedly incurred as costs. Instead of using the funds to pay claims as a legitimate captive insurance company might do, the captive insurance company was used by Defendants as a vehicle for funding Russell and Abraham Galbut's various real estate and other businesses at Medicare and Medicaid's expense.

5.     Defendants also billed Medicare and Medicaid for inflated and fictitious leases for nursing homes in the Network without disclosing that these leases were with parties owned by Russell Galbut. Under federal and state regulations, health care providers are required to disclose related party transactions to the government when submitting claims for reimbursement of their costs. 42 C.F.R. § 413.17. The purpose of this requirement is to ensure that if a health care

3

provider incurs costs in a transaction with a related party, it does not bill the government for the profits the related party gained from the transaction. A health care provider that purchases goods or services from a related party may not bill the government for the goods or services in an amount that exceeds the actual costs to the related party, without any amount added on for profits. Defendants flagrantly violated these requirements. At Russell Galbut's and the other individual defendants' direction, the nursing homes in the Hebrew Homes Health Network hid costs on their Medicare and Medicaid cost reports that were incurred on behalf of related parties that were not disclosed on the cost reports. In addition, they included fictitious costs incurred on behalf of undisclosed related parties on their cost reports. Moreover, even when they did disclose the related party involved in the transactions, they sought and obtained reimbursement from Medicare and Medicare for amounts far beyond the true costs of the transactions.

6. Accordingly, Defendants have defrauded the government of millions in government health care dollars.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this action under the FCA pursuant to 28 U.S.C. §§ 1331 and 1345 and 31 U.S.C. § 3730(a), as well as pursuant to the Court's general equitable jurisdiction.

8. Venue is appropriate in this District pursuant to 31 U.S.C. § 3732(a) because one or more of the defendants can be found, reside, or transact business in this District, and/or acts proscribed by 31 U.S.C. § 3729 occurred. Venue is also appropriate in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District. Venue is also appropriate in this District pursuant to 28 U.S.C. § 1391(c)

with respect to claims against those defendants who are subject to the Court's personal jurisdiction with respect to this action.

## THE PARTIES

### A.     The Plaintiff-Relators

9.     Plaintiff-Relator William Zubkoff, Ph.D., M.P.H., was the President and Chief Executive Officer of Hebrew Homes Health Network from 2001 until March 23, 2015, when he was wrongfully terminated by the defendants named in this action for raising concerns about defendants' failure to disclose related party transactions involving their nursing homes and defendants' inflated reimbursement by government payors as a result of the related party transactions, among other fraudulent conduct.

10.     Plaintiff-Relator Joyce Galbut[1], R.N., M.H.S.A., was the Chief Nursing Officer for Hebrew Homes Health Network and all of the related entities from 2005 to April 24, 2015, when she was wrongfully terminated by the board of Hebrew Homes Health Network for objecting to how their fraudulent related party schemes were compromising the quality of the nursing care.

11.     Since 2010, Plaintiff-Relator Henry Matos has been the Director of Clinical Information Technology for the entire Hebrew Homes Health Network.

### B.     The Defendants

#### I.     Russell Galbut's Not-for-Profit Nursing Home Parent Company and its Management Company

12.     Defendant Plaza Health Network, also known as Hebrew Homes Health Network, Inc. ("Health Homes Health Network," "the Network," or "HHHN"), which was incorporated in the State of Florida on August 10, 2000, is the largest not-for-profit teaching nursing home network

---

[1] Joyce Galbut has the same last name as Russell Galbut because she was formerly married to one of his relatives.

in Miami-Dade County, owning and operating between six and eight nursing homes at various times during the relevant time-period of the Complaint. As set forth in further detail below, the nursing homes are separately incorporated daughter companies, with the Network as their parent. In the case of many of the nursing homes, as further discussed below, there are twin daughters for each of the nursing homes, with one of the companies owning the property and the other company operating the nursing home. Each of the daughter companies in the Network is controlled by Russell Galbut and his family and close associates. Defendant Russell Galbut is, and since Hebrew Homes Health Network's inception has been, the controlling director of the board of directors of the Network.

13.   Hebrew Homes Management Services, Inc. ("Hebrew Homes Management Services," "Management Services" and "HHMS") is a Florida not-for-profit corporation headquartered at 1800 N.E. 168th Street, Suite 200, North Miami Beach, Florida 33162, in Miami-Dade County, that provides management services for the Network and its individual daughter nursing homes, including preparing and filing cost reports on behalf of the nursing homes that are submitted to Medicare and Medicaid; other billing, financial and accounting services; employment services, including payroll, staffing, and other services; information technology services, and all other administrative and back office functions for the nursing homes in the Network. It is controlled and operated by Russell Galbut and his family and close associates.

## II.   The Not-for-Profit Daughter Nursing Home Companies in the Hebrew Homes Health Network

14.   Defendant Arch Plaza, Inc. operates a not-for-profit nursing home facility, also known as Arch Plaza Nursing & Rehabilitation Center ("Arch Plaza"), in the Hebrew Homes Health Network. The nursing home is located in Miami-Dade County at 12505 N.E. 16th Avenue, North Miami, Florida 33161. It is controlled by Russell Galbut, his family and close associates.

The nursing home's property is owned by Arch Plaza Properties, Inc., a sister not-for-profit company in the Network that is also controlled by Russell Galbut, his family and close associates.

15.     Defendant Hebrew Home Sinai, Inc. operates a not-for-profit nursing home facility, also known as Sinai Plaza Nursing and Rehab Center ("Sinai Plaza"), in the Hebrew Homes Health Network.  The nursing home is located in Miami-Dade County at 201 N.E. 112th Street, North Miami, Florida 33161.  It is controlled by Russell Galbut, his family and close associates.  Hebrew Home Sinai, Inc. leases the property it is located on from Barry University.

16.     Defendant Hebrew Home of North Dade, Inc. operates a not-for-profit nursing home facility, also known as Aventura Plaza Rehabilitation & Nursing Center ("Aventura Plaza"), in the Hebrew Homes Health Network.  The nursing home is located in Miami-Dade County at 1800 N.E. 168th Street, North Miami Beach, Florida 33162.  It is controlled by Russell Galbut, his family and close associates.  The nursing home's property is owned by Aventura Plaza, Inc., a sister not-for-profit company in the Network that is also controlled by Russell Galbut, his family and close associates.

17.     Defendant Jackson Plaza, Inc. operates a not-for-profit nursing home facility, also known as Jackson Plaza Nursing and Rehabilitation Center ("Jackson Plaza"), in the Hebrew Homes Health Network.  The nursing home is located in Miami-Dade County at 1861 N.W. 8th Avenue, Miami, Florida 33136.  It is controlled by Russell Galbut, his family and close associates. The nursing home's property is owned by Hebrew Homes of Miami Beach, Inc., a sister not-for-profit company in the Network that is also controlled by Russell Galbut, his family and close associates.

18.     Defendant Ponce Plaza, Inc. operates a not-for-profit nursing home facility, also known as Ponce Plaza Nursing and Rehabilitation Center ("Ponce Plaza"), in the Hebrew Homes

7

Health Network.  The nursing home is located in Miami-Dade County at 335 S.W. 12th Avenue, Miami, Florida 33130.  It is controlled by Russell Galbut, his family and close associates.  The nursing home's property is owned by Ponce Plaza Property, Inc., a sister not-for-profit company in the Network that is also controlled by Russell Galbut, his family and close associates.

19.     Defendant University Plaza Rehabilitation and Nursing Center, Inc. operates a not-for-profit nursing home facility, also known as University Plaza ("University Plaza"), in the Hebrew Home Health Network.  The nursing home is located in Miami-Dade County at 724 N.W. 19th Street, Miami Florida 33136.  It is controlled by Russell Galbut, his family and close associates.  The nursing home's property is owned by University Plaza Properties, Inc., a sister not-for-profit company in the Network that is also controlled by Russell Galbut, his family and close associates.  University Plaza opened in 2013.

20.     Defendant Hebrew Homes of South Beach, Inc. operated a not-for-profit nursing home facility, also known as Hebrew Home for the Aged, in the Hebrew Homes Health Network.  The nursing home was located in Miami-Dade County at 320 Collins Avenue, Miami Beach, Florida 33139.  It was controlled by Russell Galbut, his family and close associates.  The nursing home's property was owned by South Beach Plaza, Inc., a sister not-for-profit company that was also controlled by Russell Galbut, his family and close associates.  After operating at the 320 Collins Avenue location as a not-for-profit nursing home for over fifty years, in 2013 Russell Galbut closed the facility and moved the residents to locations where he could make more profit from them or where his friend Philip Esformes, who was recently convicted in a massive health care fraud scheme, could make a profit from them.

21.     Defendant South Beach Nursing and Rehabilitation Center, Inc., operated a not-for-profit nursing home facility, also known as South Pointe Plaza ("South Pointe Plaza"), in the

Hebrew Homes Health Network. The nursing home was located in Miami-Dade County at 42 Collins Avenue, Miami Beach, Florida 33139. It was controlled by Russell Galbut, his family and close associates. As further discussed below, during the period 2005 through 2018, South Pointe Plaza leased the property on which it operated from Russell Galbut's for-profit real estate development company Defendant Crescent Heights for approximately $2 million a year. In May 2018, Russell Galbut canceled the lease – which he was able to do because he controlled both landlord and tenant – and sold the South Pointe Plaza property, the nursing home license, and the on-going nursing home operator's business for $31 million to a New York-based nursing home operator. Russell Galbut thus reaped huge rewards for himself and his for-profit nursing home company by increasing the value of the property and the ongoing business using Medicare and Medicaid funds and then selling the property and going concern at a huge profit.

22.     Defendant Plaza North, Inc., operated a not-for-profit nursing home facility, also known as Plaza North Nursing and Rehabilitation Center ("Plaza North"), in the Hebrew Homes Health Network. The nursing home was located in Miami-Dade County at 14601 N.E. 16th Avenue, North Miami, Florida 33161. It was controlled by Russell Galbut, his family and close associates. As further discussed below, the nursing home was closed and the building demolished in or about 2008, even though it had a long-term lease from Palms Convalescent Care, Inc. However, Russell Galbut continued to submit claims to Medicare and Medicaid, through the other Network nursing homes' cost reports for the lease, as well as seek reimbursement on the other nursing homes' cost reports for the costs of renovation of the home.

**III.     Russell Galbut's For-Profit Nursing Homes which engaged Russell Galbut's Not-for-Profit Nursing Homes in the Hebrew Homes Health Network in Related Party Transactions**

23.     Defendant Palms Convalescent Care, Inc. ("Palms Convalescent") was incorporated on December 31, 1991, in the State of Florida as a for-profit corporation doing business as a nursing home.  Defendant Russell Galbut is the Vice President and Director of Palms Convalescent and his brother, Defendant Abraham Galbut, is the President, Director, and Registered Agent for the corporation.  As discussed below, the nursing homes in the Hebrew Homes Health Network engaged in millions of dollars' worth of related party transactions that were not disclosed in the HHHN nursing homes' Medicare and Medicaid cost reports and for which false claims for reimbursement were submitted to the government.

24.     Defendant Crescent Heights is a national multi-billion-dollar real estate development company owned by Russell Galbut and his close associates.  Crescent Heights describes itself on its webpage as "the nation's leading urban real estate firm."

**IV.     Russell Galbut's Pharmacy and Captive Insurance Company which engaged Hebrew Homes Health Network Nursing Homes in Related Party Transactions for Inflated Amounts**

25.     Defendant Polaris Pharmacy Services, LLC, was incorporated on May 21, 2015 as a Florida for-profit pharmacy.  It provides all of the pharmaceuticals used by residents of the nursing homes in the Hebrew Homes Health Network.  It is owned and operated by Russell Galbut, his family members and close associates.  As discussed below, from 2016 through the present the nursing homes in the Hebrew Homes Health Network have billed Medicare and Medicaid for millions of dollars of pharmaceuticals purchased from Polaris Pharmacy Services for use by their residents in violation of the AKS and without disclosing to the government that the pharmaceuticals had been purchased from a related party.  In addition, Russell Galbut, with the

10

agreement and assistance of the other individual defendants, as further discussed below, had the nursing homes in the Network pay inflated costs for the pharmaceuticals they purchased from Polaris Pharmacy Services to reap a windfall from Medicare and Medicaid for the pharmaceuticals used by the residents of the Network's nursing homes.

26.     Defendant Polaris Pharmacy Services of Tampa, LLC, was incorporated on August 26, 2016 as a for-profit company in the State of Florida. It sells pharmaceuticals and supplies to Defendant Polaris Pharmacy Services, LLC. It is owned and controlled by Russell Galbut, his brother Abraham Galbut, and Abraham Galbut's son Daniel Galbut.

27.     Defendant Hebrew Homes Captive Services, Inc. ("Hebrew Homes Captive Services"), which was incorporated in Florida on August 10, 2000 as a not-for-profit corporation, is a captive insurance company that provides medical malpractice and workers' compensation insurance to the nursing homes in the Hebrew Homes Health Network. It is controlled and operated by Hebrew Homes Health Network, Russell Galbut and his family members and close associates, including Ron Lowy, the head of its board since 2014. As discussed below, from 2000 through the present the nursing homes in the Hebrew Homes Health Network have billed Medicare and Medicaid for millions of dollars purportedly spent on insurance when in fact the vast majority of the costs were incurred for unrelated purposes, such as payments to family members and close associates of Russell Galbut and to fund other business projects.

28.     Defendants Russell Galbut, Abraham Galbut, and Ronald Lowy were individually and collectively involved in the day-to-day operations, including but not limited to, decisions on submitting false claims for reimbursement for purported costs of the defendant companies by Medicare and Medicaid and how profits and/or funds were to be allocated, disbursed, and distributed from the defendant companies to themselves and their related companies.

11

## IV.   The Individual Defendants

29.     Defendant Russell Galbut is the controlling director of the board of Hebrew Homes Health Network and the controlling director of the board of Hebrew Homes Management Services ("Management Services").  As the controlling director of these companies, he also controls each of the daughter nursing home companies in the Network.  He makes all decisions for the Network and for Management Services regarding hiring and firing executive-level employees, as well as financial and business strategy decisions.  Russell Galbut and his family members, including Abraham Galbut, owns and manages Polaris Pharmacy Services, Polaris Pharmacy Services of Tampa.  Russell Galbut controls and operates through his brother Abraham Galbut both Hebrew Homes Captive Services and the off-shore Cayman Islands Captive.  Russell Galbut is also the controlling director of Palms Convalescent Care and Crescent Heights.  Russell Galbut is the mastermind of the fraud at issue in this Complaint.

30.     As discussed in paragraphs 28 and 29 above, defendant Abraham Galbut is intimately and intricately involved in all aspects of the fraud at issue in this Complaint.  Among other involvement, he negotiated the loan in 2010 from TD Bank to Hebrew Homes Health Network for $2.5 million to enable the Network to continue to finance the renovation of the building at 14601 N.E. 16th Avenue, North Miami, Florida, as further discussed below.  Abraham Galbut's real estate management business Hudson Capital, LLC, and his law office are in a building also owned by Russell Galbut and his Crescent Heights real estate development company. Abraham Galbut and his law firm are illegally paid large amounts of money received from Medicare and Medicaid for health care services of the nursing homes when the costs were not in fact incurred in providing services to the residents of the nursing homes. Abraham Galbut is the paid salaried CEO of the Hebrew Homes Captive, the registered agent for the Captive, the

12

registered agent for all of the Pharmacy Companies, an owner with his son Daniel Galbut of the Pharmacy Companies, and the owner with his brother Russell Galbut of Palms Convalescent Care. Daniel Galbut (Abraham Galbut's son) is also the full-time salaried COO of the entire nursing home network and an owner of the Pharmacy Companies.

31.    Ronald Lowy was selected by Russell Galbut to replace him as Chairman of the Board of the parent Hebrew Homes Health Network. Ron Lowy has worked as a consultant for years for Russell Galbut personally, his Crescent Heights real estate company, and in other businesses owned by Russell Galbut. Mr. Lowy is a Director and the Vice-President of the Captive Insurance Company, and was the Chairman of the Board Committee that evaluated all real estate bids in the sale of the Hebrew Home for the Aged facility at 320 Collins Ave, and the sale of the South Pointe Plaza facility at 42 Collins Ave.

## DEFENDANTS' SCHEME TO DEFRAUD MEDICARE AND MEDICAID

### A.    Background

32.    The nursing homes in the Hebrew Homes Health Network derive the vast majority of their revenue from Medicare and Medicaid, with about 20% of the revenue coming from Medicare and about 80% from Medicaid. The majority of the patients are Medicare or Medicaid recipients or are dual eligible. Defendants engaged in multiple forms of fraud, described further below, including (1) billing Medicare and Medicaid for drugs and other services purchased by their wholly-owned pharmacy in violation of the Anti-Kickback Statute and related party regulations and at inflated costs; (2) billing Medicare and Medicaid for purported costs of the captive insurance company that were not in fact incurred in providing insurance services for the nursing homes in the Network; (3) billing Medicare and Medicaid for fictitious and inflated leases with undisclosed related parties; and (4) billing Medicare and Medicaid for phantom employees,

including family members, and for personal employees of their companies that were not engaged in the nursing home businesses. A diagram showing the nursing homes and other entities in the Hebrew Homes Health Network, the vehicles Russell Galbut used in conjunction with the Network nursing homes to engage in the fraud at issue in this Complaint, and the various businesses into which he funneled the Medicare and Medicaid funds he illegally obtained through the false claims he submitted is attached as Exhibit A to this Complaint as a visual depiction of the structure, process and outcome of the fraud.

**B.      Defendants Fraudulently Billed the Government for Pharmaceuticals Purchased from a Pharmacy Owned by Russell Galbut and His Family**

33.     On May 21, 2015, Polaris Pharmacy Services, LLC ("Polaris Pharmacy Services") was incorporated in the State of Florida as a pharmacy to provide pharmaceuticals and other supplies to the Hebrew Homes network of nursing homes. Polaris Pharmacy Services is owned and managed by Russell Galbut, and his family members, including Abraham Galbut and Daniel E. Galbut, Abraham Galbut's son, who receive salaries and consulting fees. It is also managed by David Rombro and Elan Katz, who are entirely under the control of Russell Galbut and his family.

34.     On August 26, 2016, a related company, Polaris Pharmacy Services of Tampa, LLC, was also incorporated in the State of Florida as a pharmacy to provide services to the Hebrew Homes network of nursing homes. Polaris Pharmacy Services of Tampa sells pharmaceuticals and supplies to Polaris Pharmacy Services. Polaris Pharmacy Services of Tampa is owned and managed by the same group of people as Polaris Pharmacy Services.

35.     Starting in or about February 2016, the nursing homes in the Hebrew Homes Health Network began purchasing all of their pharmaceutical products and other supplies from Polaris Pharmacy Services in violation of the AKS; and the Medicare and Medicaid freedom of choice statutes, 42 U.S.C. §1395a(a) and §1396a(a)(23). The claims submitted by defendants in violation

of these statutes violated the federal False Claims Act, 31 U.S.C. §§3729, *et seq.*, and the Florida False Claims Act, Fla. Stat. §§68.081-68.09.

36.     In Florida, nursing homes are reimbursed initially on a monthly basis for the cost of pharmaceuticals at rates that have been pre-determined by Medicare and Medicaid for the pharmaceutical products.  Nursing homes may then seek reimbursement on their annual cost reports for costs exceeding the pre-determined amount.

37.     The vast majority of the residents of the nursing homes in the Hebrew Homes Health Network were and are Medicare or Medicaid beneficiaries or both.  The nursing homes in the Network billed Medicare and Medicaid on a monthly basis for the pre-determined amounts for the pharmaceuticals they purchased and submitted annual cost reports to Medicare and Medicaid for the cost of the pharmaceuticals that exceeded the pre-determined amount.  The seven nursing homes in the Hebrew Homes Health Network included the following costs for pharmaceuticals on their Medicaid cost reports for calendar year 2016:

| Nursing Home in the Hebrew Homes Health Network | Pharmaceutical Costs Included on Worksheet A of Medicaid Cost Report for Calendar Year 2016 |
| --- | --- |
| University Plaza | $439,513 |
| Ponce Plaza | $368,260 |
| Jackson Plaza | $255,123 |
| Sinai Plaza | $242,791 |
| South Pointe Plaza | $206,211 |
| Arch Plaza | $193,125 |
| Aventura Plaza | $151,571 |

*See* Worksheet A on each nursing homes' 2016 Medicaid cost report, Ancillary Service Cost Centers, Line 49.  These claims were fraudulent because the pharmaceuticals were purchased, starting in or about February 2016, from Polaris Pharmacy Services.  Upon information and belief, each of the nursing homes included similar fraudulent claims for pharmaceuticals on its cost

reports in each subsequent year through the present. In addition, upon information and belief, Polaris Pharmacy Services submitted claims for pharmaceuticals for the Network nursing homes to Medicare Part D. Those claims were all fraudulent as well because they violated the AKS, the Medicare and Medicaid freedom of choice requirements, and for the reasons further discussed below.

38.    Besides violating the AKS and the freedom of choice requirements of Medicare and Medicaid, the inclusion of the drug costs on the Hebrew Homes nursing homes' cost reports also constituted false claims because the nursing homes failed to report on their cost reports that they were purchasing their pharmaceutical products from a related party, namely Polaris Pharmacy Services. Defendants intentionally engaged in a systemic pattern of deception to hide from the government the fact that the pharmaceuticals sold to the nursing homes in the Network were purchased from a pharmacy which had overlapping ownership with the nursing homes.

39.    Further exacerbating this fraud, Russell Galbut and Hebrew Homes, through Polaris Pharmacy Services, they intentionally inflated the cost of pharmaceuticals for the Hebrew Homes nursing homes. Prior to the creation of Polaris Pharmacy Services, the Hebrew Homes Health Network nursing homes purchased their pharmaceutical products from CVS Omnicare for several years. After February 2016, when the Hebrew Homes nursing homes began purchasing their pharmaceuticals from Polaris Pharmacy Services instead, the cost of pharmaceuticals at the Hebrew Homes nursing homes increased significantly.

40.    During 2015, when the Hebrew Homes nursing homes purchased pharmaceutical products from CVS Omnicare, the average claim per patient for the Hebrew Homes nursing homes was $499.28. During 2017, when the pharmaceutical products were purchased from Polaris Pharmacy Services, the average claim per patient increased to $594.22. This represents an increase

for the average claim for pharmaceutical products of 19 percent, and there was no medical basis for such a drastic increase.

41.     These inflated costs were submitted for reimbursement from Medicare and Medicaid on the Hebrew Homes nursing homes' Medicare and Medicaid cost reports.

42.     In addition to these frauds, Defendants also further defrauded the government, as well as abused their patients, by over-prescribing services which could be billed to the government through Polaris Pharmacy Services.  For example, in 2016, Defendants prescribed feeding tubes for patients who did not need them and would not have received them, other than that Defendants could bill the government, and supply patients with  these unnecessary feeding tube supplements through Polaris Pharmacy Services.  This is only one example of the many instances of over-prescribing that occurred as a result of Russell Galbut's ownership of both the nursing homes and the pharmacy that provided the nursing homes' drugs and supplies.

C.     **Defendants Submitted False Claims to the Government for Reimbursement of Payments to Themselves and Others Through Defendants' Captive Insurance Company**

43.     On August 8, 2000, Russell Galbut incorporated Hebrew Homes Captive Services, Inc. ("Hebrew Homes Captive Services") in the State of Florida as a not-for-profit entity.  Russell Galbut is the controlling member of the governing board of the captive insurance company and Hebrew Homes Health Network is the sole member of the corporation.  Abraham Galbut is the salaried CEO.  The audited financial statement for Hebrew Homes Health Network states that Hebrew Homes Captive Services is wholly sponsored by Hebrew Homes Health Network.

44.     Hebrew Homes Captive Services was ostensibly formed for the purpose of providing captive insurance support services to the not-for-profit health care facilities that are controlled by Russell Galbut.  In fact, it operated as a vehicle to enable Defendants to bill Medicare

17

and Medicaid for payments that were made to Russell Galbut and his family and related companies unrelated to the provisions of services to residents of the nursing homes.

45.    Russell Galbut also formed an additional captive insurance company for Hebrew Homes, called Hebrew Homes Insurance Services, Ltd (hereinafter "Hebrew Homes Off-Shore Captive"), offshore in the Cayman Islands. This captive insurance company is also owned and controlled by Russell Galbut and Abraham Galbut. Hebrew Homes Off-Shore Captive is wholly sponsored by Hebrew Homes Captive Services and bills Hebrew Homes Captive Services for purported insurance-related services. As further discussed below, the off-shore captive insurance company was used as a vehicle to funnel Medicare and Medicaid funds to Russell Galbut and Abraham Galbut, as well as to send funds to other companies with which the two brothers have financial relationships.

46.    On a monthly basis, each nursing home in the Hebrew Homes network paid and continues to pay a premium to Hebrew Homes Captive Services for workers' compensation and medical malpractice coverage. In each of the years 2012 through 2015, these premiums totaled approximately $2 million a year. Upon information and belief, they totaled at least that amount for the preceding and succeeding years as well. The premiums greatly exceed the actual costs of the nursing homes in the Network for payment of workers' compensation and medical malpractice claims.

47.    The premiums paid by the Network nursing homes to Hebrew Homes Captive Services are billed to Medicare and Medicaid on the nursing homes' cost reports for reimbursement by the government. Although the actual costs expended for claims are less than 20% of the amount of the premiums, Defendants have never performed a reconciliation of "budgeted" costs to actual costs or refunded any amounts to the government. Appropriate refunds

from the captive insurance company to the individual facilities should have been included on the nursing homes' cost reports as a credit to the government to return the overpaid funds.

48.     Instead, Russell Galbut and Abraham Galbut and their close associates used the captive insurance companies as a piggybank, with funds routinely being transferred from the companies to Russell Galbut and his family's private real estate, management and consulting firms that have nothing to do with providing insurance services to nursing homes. For example, checks were paid from the captive insurance company to NKW Biscayne Investments, LLC, CFG Properties, Inc., Hudson Capital, LLC, and Pulmonary Medicine Associates of Miami, among others, all of which are related to Defendants.

49.     Each year, Hebrew Homes Off-Shore Captive sends Hebrew Homes Captive Services funds denominated as "grants." For example, the off-shore captive sent the Florida captive insurance company purported "grants" in the amounts of $300,000, $400,000, $400,000 and $700,000 for each year, respectively, during the period 2012 through 2015. These moneys, which consisted of funds provided by Medicare and Medicaid, were used to fund Abraham Galbut's law firm and his Hudson Capital, LLC, real estate management firm, among other uses unrelated to workers' compensation and medical malpractice. During the period 2001 through 2015, Abraham Galbut, his firm, and his close associates received checks totaling $2,440,703 from Hebrew Homes Captive Services. Russell Galbut further benefits from the payments to Abraham Galbut's law firm because the law firm occupies space in a building that is owned by the Galbut entities and is leased to Abraham Galbut's law firm.

50.     As of December 1, 2015, Hebrew Homes Captive Services had a total gross income of $24.4 million. Of this amount, only $4.65 million, less than twenty percent, was used to pay workers' compensation and medical malpractice claims for the Network nursing homes. The vast

majority of the balance of nearly $20 million was funneled to Abraham Galbut and his related entities. Abraham Galbut paid himself $2.3 million personally from the captive insurance company. In addition, money from the captive insurance company – which consisted of Medicare and Medicaid funds that were reimbursed by the government to pay insurance costs and not for any other purposes – were deposited in banks to finance private real estate transactions of Russell Galbut and Abraham Galbut, including at Gibraltar Bank and Deutsche Bank.

**D.    False Claims to Medicare and Medicaid for South Pointe Plaza Nursing Homes' Inflated Lease to an Undisclosed Related Party, Russell Galbut's For-Profit Nursing Home Company, Crescent Heights**

51.    In 2005, Russell Galbut, through his for-profit nursing home company Crescent Heights, purchased a nursing home at 42 Collins Avenue, Miami Beach, Florida, which he operated as South Pointe Plaza Nursing and Rehabilitation Center ("South Pointe Plaza"). After the purchase, he arranged for South Pointe Plaza to pay approximately $2 million per year, as a "triple net" lease payment, including the property taxes, insurance and maintenance for the property in addition to the rent, to his for-profit nursing home company Crescent Heights. The lease was grossly inflated -- by approximately a factor of four -- over what it would have been in an arms' length transaction. For example, the lease for the Sinai Plaza nursing home, which was entered into through an arms' length transaction with Barry University, is $400,000 per year, less than a quarter of the amount of the lease between South Pointe Plaza and Crescent Heights.

52.    The inflated rental costs of South Pointe Plaza's lease from Crescent Heights were included on the South Pointe Plaza nursing home's Medicare and Medicaid cost reports from 2005 through 2018 but the cost reports did not disclose that the landlord was Russell Galbut's own for-profit company, Crescent Heights. Thus, Medicare and Medicaid were reimbursing South Pointe's inflated lease costs without the required disclosure. The excessive rent payments by South Pointe

to Crescent Heights violated Medicaid and Florida Medicaid prudent buyer requirements, set forth in CMS Pub. 15-1 §2103 and the Florida Medicaid Long Term Care Reimbursement Plan, Attachment 4.19-D, Part 1 Section III.C. Defendants also violated Medicare and Medicaid's requirement that any transactions between related parties be disclosed on the cost reports and only the actual cost for the transaction may be included on the cost reports. 42 C.F.R. § 413.17; Florida Medicaid Long Term Care Reimbursement Plan, Attachment 4.19D, Part 1 Section III.F.

53.     In addition, in 2013, Russell Galbut and the board of directors of Hebrew Homes closed a long-operating nursing home in the network, Hebrew Home of South Beach (also called Hebrew Home for the Aged) and moved many of the residents to South Pointe Plaza to avail themselves of the higher per day reimbursement rate from Medicaid at South Pointe relative to Hebrew Home for the Aged (approximately $250 per-resident-per-day versus approximately $200 per resident per day). Other residents of the closed nursing home were transferred to nursing homes run by Russell Galbut's friend Philip Esformes, who has been convicted in a massive nursing home fraud. The closure of Hebrew Home for the Aged, which also involved the laying-off of all of the employees of the home, was carried out for the purpose of increasing Russell Galbut's profits without regard to the disruption to the lives of the residents.

54.     Moreover, in May 2018, Russell Galbut canceled the lease – over which he had exclusive authority as the controlling both landlord and tenant – and sold the South Pointe Plaza property, the nursing home license, and the on-going nursing home operator's business for $31 million to a New York-based nursing home operator. He thus reaped huge rewards for himself and his for-profit nursing home company by increasing the value of the property and the ongoing business using Medicare and Medicaid funds and then selling the property and going concern at a huge profit.

**E.**     **False Claims to Medicare and Medicaid for Rent for Plaza North, Which Was Not Even Operating, and Where the Rent Was Paid to a Related Party at Inflated Rates**

55.     On April 29, 1992, Defendant Palms Convalescent Care, Inc. ("Palms Convalescent Care"), a for-profit nursing home company owned by defendant Russell Galbut, his brother Abraham Galbut, and other close affiliates of Russell Galbut, purchased a building located at 14601 N.E. 16th Avenue, Miami, Florida. The building had been operated as a nursing home by the prior owner. From 1992 until 2002, Russell Galbut operated a nursing home on the property under the name Palms Convalescent Care.

56.     In 2002, several years after he created Hebrew Homes, the property was leased by Plaza North, Inc. ("Plaza North"), a not-for-profit nursing home controlled by Russell Galbut that at that time was part of the Hebrew Homes Health Network. Plaza North leased the property at 14601 N.E. 16th Avenue from Palms Convalescent Care for $25,000 per month. As in the case of South Pointe Plaza's lease from Crescent Height, the lease was a triple net lease, providing for Plaza North to pay the property taxes, insurance and maintenance for the property in addition to the rent. From 2002 through in or about 2008, the not-for-profit nursing home company Plaza North operated an 85-bed nursing home at the site.

57.     However, in or about 2008, in preparation for renovating the property (though without a permit or any construction plans), Russell Galbut demolished the nursing home building, closed the Plaza North nursing home, and began renovating the property. The residents of the former Plaza North were moved to nearby nursing homes that were also operated by Hebrew Homes Health Network and Russell Galbut.

58.     Although he was no longer able to operate a nursing home from the 14601 N.E. 16th Avenue location during the renovation, Russell Galbut and Hebrew Homes Health Network, through the active sister nursing homes in the Network, upon information and belief, Russell

Galbut continued to bill the government for the costs of the lease, or a portion of those costs, as though a nursing home continued to operate there. Upon information and belief, the $25,000 per month leasehold payments from the defunct Plaza North nursing home to Palms Convalescent Care, or at least a portion of those costs, were included on the cost reports submitted to Medicare and Medicaid for the nursing homes in the Network that were still operating. To be clear, the nursing home was closed and yet Defendants charged Medicare/Medicaid as if it was open and operating as usual.

59.     Russell Galbut was on both sides of the Plaza North lease with Palms Convalescent Care, with control over both the lessee and lessor and the chief beneficiary of the lease payments. He was the chairman of the board of Hebrew Homes Health Network, the parent of the defunct entity Plaza North, the lessee. He was also the owner and operator of the lessor, Palms Convalescent Care, which owned the property at 14601 N.E. 16th Street property. As chairman of the board of the not-for-profit Hebrew Homes Health Network, he directed the Network to continue to pay full rent and associated costs for the demolished, empty and unusable property and to pass those costs along to the government as though Hebrew Homes Health Network was using the property to operate a nursing home there. However, at the direction of Russell Galbut and the other individual defendants, the nursing homes in the Hebrew Homes Health Network did not report the lease in their Medicare and Medicaid cost reports as a related party transaction. Thus, both because the costs were associated with a non-disclosed related party transaction and because the lease was fictitious in that it was for a defunct property that was not operating as a nursing home, the inclusion of these costs on the defendant Network nursing homes' cost reports were false claims submitted to the government.

60.     Moreover, in addition to the rent and associated costs, upon information and belief, the defendant non-profit nursing homes in the Hebrew Homes Health Network also billed the government, through the cost reports submitted by the nursing homes in the Network that were still operating, for the cost of the renovation of the property at 14601 N.E. 16th Avenue. These costs were separate and apart from the $25,000 per month fictitious lease. Like the costs of the Plaza North lease, at Russell Galbut's direction the non-profit nursing home defendants also failed to report these costs as incurred in a related party transaction. As a result, like the leasehold payments, the inclusion of these costs on the defendant Network nursing homes' cost report were false claims submitted to the government.

61.     In addition, in 2010, Russell Galbut and Abraham Galbut, obtained a loan to Hebrew Homes for $2,500,000 from TD Bank to provide additional funds for the renovation of 14601 N.E. 16th Avenue. The loan was collateralized by property owned by Aventura Plaza, one of the non-profit nursing homes in the Hebrew Homes network. The payments on the loan were allocated to the nursing homes in the Hebrew Homes network and, on information and belief, were included on each of the homes' Medicare and Medicaid cost reports as mortgage payments on the loan.

62.     Further exacerbating the fraud, in 2015, Russell Galbut caused an application to be submitted to the State of Florida requesting approval to renovate and expand the 14601 N.E. 16th Avenue property by 104 beds, using the de-activated license from Hebrew Home for the Aged, which Russell Galbut had closed in 2013.

63.     In 2018, after years of having the not-for-profit nursing homes in the Hebrew Homes Health Network pay all expenses (rent, property taxes, security guards, etc.) for the empty unusable building with funds from the government, Russell Galbut now plans to operate the

24

nursing home through his for-profit nursing home company, Palms Convalescent Care, Inc. Thus, in addition to defrauding the government of millions in the guise of rent payments in an undisclosed related party transaction for a defunct property, Russell Galbut and the other individual defendants, along with the Network and the defendant nursing homes in the Network, further defrauded Medicare and Medicaid by using government health care funds to finance the renovation of a nursing home for the benefit of Russell Galbut's for-profit nursing home company, Palms Convalescent Care.

**F. False Claims to Medicare and Medicaid for Phantom Employees**

64. In addition, on information and belief, Russell Galbut also billed Medicare and Medicaid for phantom employees of Hebrew Homes Management Services, including various Galbut family relatives, fictitious employees of Crescent Heights, and Hudson Capital's personal employees, who were not involved in providing health care services for the Network nursing homes. On information and belief, the costs of these phantom employees and employees at Russell Galbut's companies who were not providing services to the nursing homes in the Network, were billed to the government on the Network nursing homes' cost reports as wage and benefit costs of the nursing homes.

## FIRST CAUSE OF ACTION

### (Federal False Claims Act, 31 U.S.C. §3729(a)(1)(A) – Presenting False Claims for Payment)

### Against All Defendants Except Palms Convalescent Care, Inc. and Crescent Heights

65. Plaintiff-Relators restate and incorporate each and every allegation above as if the same were fully set forth herein.

66. Plaintiff-Relators seeks relief against the Defendants under Section 3729(a)(1)(A) of the False Claims Act, 31 U.S.C. §3729(a)(1)(A).

67.     As set forth above, Defendants knowingly or acting with deliberate ignorance or with reckless disregard for the truth, presented, or caused to be presented, to an officer, employee or agent of the government, false and fraudulent claims for payment or approval.

68.     The government paid Defendants the funds because of Defendants' fraudulent conduct.

69.     By reason of Defendants' false claims, the government has been damaged in a substantial amount to be determined at trial, and a civil penalty as required by law for each violation.

## SECOND CAUSE OF ACTION

**(Federal False Claims Act, 31 U.S.C. §3729(a)(1)(B) - Creation or Use of False Statements or Records Material to a False Claim)**

**Against All Defendants Except Palms Convalescent Care, Inc. and Crescent Heights**

70.     Plaintiff-Relators restate and incorporate each and every allegation above as if the same were fully set forth herein.

71.     Plaintiff-Relators seek relief against the Defendants under Section 3729(a)(1)(B) of the False Claims Act, 31 U.S.C. §3729(a)(1)(B).  By virtue of the above-described acts, among others, Defendants knowingly created or caused to be created, made, or used materially false records or statements to cause false claims to be made to the government.

72.     As set forth above, Defendants knowingly or acting in deliberate ignorance or in reckless disregard of the truth, made, used, and caused to be made and used, false records and statements material to a false or fraudulent claim.

73.     By reason of Defendants' false claims, the government has been damaged in a substantial amount to be determined at trial, and a civil penalty as required by law for each violation.

26

## THIRD CAUSE OF ACTION

**(Federal False Claims Act, 31 U.S.C. §3729(3) (2006), and, as amended 31 U.S.C. §3729(a)(1)(C) - Conspiracy)**

**Against All Defendants**

74.     Plaintiff-Relators restate and incorporate each and every allegation above as if the same were fully set forth herein.

75.     Plaintiff-Relators seek relief against Defendants under Section 3729(a)(1)(C) of the False Claims Act.

76.     Defendants conspired to make, use, or cause to be made or used, false records and/or statements to obtain funds from Medicare and Medicaid to which they were not entitled.

77.     The government incurred losses from Medicare and Medicaid because of Defendants' conspiracy to commit wrongful and fraudulent conduct.

78.     By virtue of Defendants' conspiracy to make false records or statements to obtain Medicare and Medicaid moneys to which they were not entitled, the government suffered damages and therefore is entitle to treble damages under the False Claims Act, to be determined at trial, and a civil penalty as required by law for each violation.

## FOURTH CAUSE OF ACTION

**(Federal False Claims Act, 31 U.S.C. §3729(a)(7) (2006), and, as amended 31 U.S.C. §3729(a)(1)(G) – Reverse False Claims)**

**Against All Defendants Except Palms Convalescent Care, Inc. and Crescent Heights**

79.     Plaintiff-Relators restate and incorporate each and every allegation above as if the same were fully set forth herein.

80.     On behalf of the Government, Plaintiff-Relators seek relief against Defendants under Section 3729(a)(7) of the False Claims Act, 31 U.S.C. §3729(a)(7)(2006), and, as amended, Section 3729(a)(1)(G) of the False Claims Act, 31 U.S.C. § 3729(a)(1)(G).

81.     Defendants knowingly made, used, or caused to be made or used false records and/or statements to conceal, avoid, or decrease obligations to pay or transmit money or property, in the form of overpayments of purported insurance costs, to the United States.

82.     The Government incurred losses relating to health care reimbursement payments that Defendants wrongfully failed to return.

83.     By virtue of the false records or statements made by Defendants, the Government suffered damages and therefore is entitled to treble damages under the False Claims Act, to be determined at trial, and a civil penalty as required by law for each violation.

## FIFTH CAUSE OF ACTION

### (Florida False Claims Act, Fla. Stat. §68.082(2)(a) – Presenting False Claims for Payment)

### Against All Defendants Except Palms Convalescent Care, Inc. and Crescent Heights

84.     Plaintiff-Relators restate and incorporate each and every allegation above as if the same were fully set forth herein.

85.     Plaintiff-Relators seek relief against the Defendants under the Florida False Claims Act, Fla Stat. §68.081, *et seq.*

86.     As set forth above, Defendants knowingly or acting with deliberate ignorance or with reckless disregard for the truth, presented, or caused to be presented, to an officer, employee or agent of the government, false and fraudulent claims for payment or approval, in violation of Fla. Stat. § 68.082(2)(a).

28

87.     The State of Florida paid Defendants the funds because of Defendants' fraudulent conduct.

88.     By reason of Defendants' false claims, the State of Florida has been damaged in a substantial amount to be determined at trial, and a civil penalty as required by law for each violation.

## SIXTH CAUSE OF ACTION

### (Florida False Claims Act, Fla. Stat. §68.082(2)(b) - Creation or Use of False Statements or Records Material to a False Claim)

### Against All Defendants Except Palms Convalescent Care, Inc. and Crescent Heights

89.     Plaintiff-Relators restate and incorporate each and every allegation above as if the same were fully set forth herein.

90.     Plaintiff-Relators seek relief against the Defendants under the Florida False Claims Act, Fla Stat. §68.081, *et seq.*  By virtue of the above-described acts, among others, Defendants knowingly created or caused to be created, made, or used materially false records or statements to cause false claims to be made for payment, in violation of Fla Stat. §68.082(2)(b).

91.     As set forth above, Defendants knowingly or acting in deliberate ignorance or in reckless disregard of the truth, made, used, and caused to be made and used, false records and statements material to a false or fraudulent claim, in violation of Fla Stat. §68.082(2)(b).

92.     By reason of Defendants' false claims, the State of Florida has been damaged in a substantial amount to be determined at trial, and a civil penalty as required by law for each violation.

## SEVENTH CAUSE OF ACTION

**(Florida False Claims Act, Fla. Stat. §68.082(2)(c) - Conspiracy)**

**Against All Defendants**

93.     Plaintiff-Relators restate and incorporate each and every allegation above as if the same were fully set forth herein.

94.     Plaintiff-Relators seek relief against Defendants under the Florida False Claims Act, Fla Stat. §68.081, *et seq.*, and specifically, Fla Stat. §68.082(2)(c).

95.     Defendants conspired to make, use, or cause to be made or used, false records and/or statements to obtain funds from Medicare and Medicaid to which they were not entitled.

96.     The government incurred losses from Medicare and Medicaid because of Defendants' conspiracy to commit wrongful and fraudulent conduct.

97.     By virtue of Defendants' conspiracy to make false records or statements to obtain Medicare and Medicaid moneys to which they were not entitled, the State of Florida suffered damages and therefore is entitle to treble damages under the Florida False Claims Act, to be determined at trial, and a civil penalty as required by law for each violation.

## EIGHTH CAUSE OF ACTION

**(Florida False Claims Act, Fla. Stat. §68.082(2)(b)(g) – Reverse False Claims)**

**Against All Defendants Except Palms Convalescent Care, Inc. and Crescent Heights**

98.     Plaintiff-Relators restate and incorporate each and every allegation above as if the same were fully set forth herein.

99.     On behalf of the Government, Plaintiff-Relators seek relief against Defendants under the Florida False Claims Act, Fla Stat. §68.081, *et seq.*, and specifically, Fla Stat. §68.082(2)(g).

100.    Defendants knowingly made, used, or caused to be made or used false records and/or statements to conceal, avoid, or decrease obligations to pay or transmit money or property, in the form of overpayments of purported insurance costs, to the United States.

101.    The Government incurred losses relating to health care reimbursement payments that Defendants wrongfully failed to return.

102.    By virtue of the false records or statements made by Defendants, the State of Florida suffered damages and therefore is entitled to treble damages under the Florida False Claims Act, to be determined at trial, and a civil penalty as required by law for each violation.

## NINTH CAUSE OF ACTION

### (FCA, 31 U.S.C. §3730(h) – Retaliation)

### Against All Defendants Except Palms Convalescent Care, Inc. and Crescent Heights

103.    Plaintiff-Relators Zubkoff and Joyce Galbut restate and incorporate each and every allegation above as if the same were fully set forth herein.

104.    Plaintiff-Relators Zubkoff and Joyce Galbut engaged in protected conduct as whistleblowers within the meaning of the FCA by opposing Defendants' fraudulent conduct described above. Both Plaintiff-Relators Zubkoff and Galbut were employees, contractors, or agents that were discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by themselves in furtherance of an action under this section or other efforts to stop violations of the False Claims Act.

105.    Plaintiff-Relators Zubkoff and Joyce Galbut were retaliated against by Defendants because of their protected activity by being terminated.

106.    As a direct and proximate result of these defendants' actions, Plaintiff-Relators have suffered and will continue to suffer a loss of earnings and other employment benefits,

31

whereby Plaintiff-Relators are entitled to general compensatory damages in amounts to be proven at trial.

107. Plaintiff-Relators have further suffered and will continue to suffer pain and mental anguish and emotional distress.

108. Plaintiff-Relators are entitled to recover litigation costs and reasonable attorney's fees resulting from these defendants' retaliation against them, along with other compensatory damages necessary to make Plaintiff-Relators whole.

## TENTH CAUSE OF ACTION

### (Florida False Claims Act, F.S.A. § 68.088 and Florida Whistle-blower's Act, F.S.A. § 112.3187)

### Against All Defendants Except Palms Convalescent Care, Inc. and Crescent Heights

109. Plaintiff-Relators Zubkoff and Joyce Galbut restate and incorporate each and every allegation above as if the same were fully set forth herein.

110. Plaintiff-Relators Zubkoff and Joyce Galbut engaged in protected conduct as whistleblowers within the meaning of the Florida FCA, F.S.A. § 68.088 and Florida Whistle-blower's Act, F.S.A. § 112.3187, by opposing Defendants' fraudulent conduct described above.

111. Plaintiff-Relators Zubkoff and Joyce Galbut were retaliated against by Defendants because of their protected activity by being terminated.

112. As a direct and proximate result of these defendants' actions, Plaintiff-Relators have suffered and will continue to suffer a loss of earnings and other employment benefits, whereby Plaintiff-Relators are entitled to general compensatory damages in amounts to be proven at trial.

113. Plaintiff-Relators have further suffered and will continue to suffer pain and mental anguish and emotional distress.

114. Plaintiff-Relators are entitled to recover litigation costs and reasonable attorney's fees resulting from these defendants' retaliation against them, along with other compensatory damages necessary to make Plaintiff-Relators whole.

**WHEREFORE**, Plaintiff-Relators, on behalf of the Government, respectfully request that judgment be entered in their favor and against Defendants as follows:

a. On the First Claim for Relief (Violation of the Federal False Claims Act), treble the Government's damages in an amount to be determined at trial, such civil penalties as are required by law, and an award of costs;

b. On the Second Claim for Relief (Violation of the Federal False Claims Act), treble the Government's damages in an amount to be determined at trial, such civil penalties as are required by law, and an award of costs;

c. On the Third Claim for Relief (Violation of the Federal False Claims Act), treble the Government's damages in an amount to be determined at trial, such civil penalties as are required by law, and an award of costs;

d. On the Fourth Claim for Relief (Violation of the Federal False Claims Act), treble the Government's damages in an amount to be determined at trial, such civil penalties as are required by law, and an award of costs;

e. On the Fifth Claim for Relief (Violation of the Florida False Claims Act), treble the Government's damages in an amount to be determined at trial, such civil penalties as are required by law, and an award of costs;

f. On the Sixth Claim for Relief (Violation of the Florida False Claims Act), treble the Government's damages in an amount to be determined at trial, such civil penalties as are required by law, and an award of costs;

g.     On the Seventh Claim for Relief (Violation of the Florida False Claims Act), treble the Government's damages in an amount to be determined at trial, such civil penalties as are required by law, and an award of costs;

h.     On the Eighth Claim for Relief (Violation of the Florida False Claims Act), treble the Government's damages in an amount to be determined at trial, such civil penalties as are required by law, and an award of costs;

i.     On the Ninth Claim for Relief (Retaliation under the False Claims Act), loss of earnings and other employment benefits, other compensatory damages, pain and suffering, mental anguish and emotional distress, as well as an award of costs;

j.     On the Tenth Claim for Relief (Retaliation under the Florida False Claims Act and Florida Whistle-blower Act), loss of earnings and other employment benefits, other compensatory damages, pain and suffering, mental anguish and emotional distress, as well as an award of costs;

k.     Such other relief as is just and proper.

## JURY TRIAL DEMAND

Relator hereby demands a jury trial on all issues triable to a jury.

Respectfully submitted this 25th day of April, 2019.

/s/ Noel P. McDonell
Noel P. McDonell, Esq.
Florida Bar No.: 0899232
Bryen N. Hill, Esq.
Florida Bar. No.: 0095993
Macfarlane, Ferguson & McMullen
201 N. Franklin Street, Suite 2000
Tampa, FL 33602
(813) 273-4200 - Telephone
(813) 273-4396 - Facsimile

34

Primary email:      npm@macfar.com
Secondary email:    bnh@macfar.com
                    zla@macfar.com
                    vac@macfar.com
                    ash@macfar.com

Attorneys for Plaintiff-Relators



**Related Party Insider Fraud "Maze"**
**Funds Flow from Not-For-Profit to Russell Galbut, Galbut Family, and Crescent Heights**

| **STRUCTURE**<br>Not-For-Profit Entities | **PROCESS**<br>Related Party Insider Fraud Vehicles | **OUTCOME**<br>Related Party Insider Fraud Funds Flow Through the "Maze" to: |

Not-For Profit Parent Corporation
Hebrew Homes Plaza Health Network
(Russell Galbut – Board Chairman)

Hebrew Homes Management Services
(Ron Lowy, Elaine Bloom, Harry Fruhman, Daniel Galbut, Rachel Schuster)

Hebrew Homes Captive Florida (Abraham Galbut)
Off-Shore Cayman Islands Captive (Abraham Galbut)

Aventura Nursing – Operator
Aventura Real Estate (Mortgaged)

Arch Nursing – Operator
Arch Real Estate (Sold HUD)

Jackson Nursing – Operator
Jackson Real Estate (Sold HUD)

Plaza North Nursing – Operator (Closed)
Palms Convalescent Real Estate
(For-Profit owned by Russell Galbut and Abraham Galbut)

Ponce Nursing – Operator
Ponce Real Estate (Sold HUD)

Sinai Nursing – Operator
Sinai Real Estate (Leased)

South Beach Nursing – Operator (Closed)
South Beach Real Estate (Sold)

South Pointe Nursing – Operator (Sold)
South Pointe Real Estate (Sold)
(For-Profit owned by Russell Galbut and Crescent Heights)

University Nursing – Operator
University Real Estate (tax-exempt bonds)

Not-For-Profit South Shore Hospital (Closed)
South Shore Hospital Real Estate
(For-Profit owned by Russell Galbut and Crescent Heights)

Real Estate "Shell Game" Transactions

Excessive rent to Russell Galbut and Crescent Heights for South Pointe Plaza (2005-2018)

Closing of Not-For-Profit Hebrew Home South Beach Plaza – Transfer of Business, License, and Sale of Land (2013-2015)

Plaza North / Palms Convalescent Empty Building (Rent, Expenses, License) (2007-2018)

South Pointe Plaza – Sale of Both Landlord Building and Tenant Business (2018)

Management Services
- Phantom employees (Galbut Family relatives, Russell Galbut's Crescent Heights and Abraham Galbut's Hudson Capital personal employees) (2007-2018)

Pharmacy and Other Ancillaries
- For-Profit Pharmacy (Galbut Family-Owned) (2015-present)

Captive Insurance
- Florida Captive Insurance
- Off-Shore Cayman Islands Captive Insurance (2002-present)

"Laundered" $

Russell Galbut personally, and his Crescent Heights' Real Estate Development Company

Abraham Galbut personally, and his Hudson Capital Management Company

Russell Galbut, Abraham Galbut, the Galbut Family, and their subordinates (Ron Lowy, Elaine Bloom, Harry Fruhman, Daniel Galbut, and Rachel Schuster)

**EXHIBIT**
**A**



MACFARLANE FERGUSON & MCMULLEN

ATTORNEYS & COUNSELORS AT LAW   EST. 1884

One Tampa City Center, Suite 2000
201 N. Franklin Street
P.O. Box 1531 (33601)
Tampa, FL 33602
813.273.4200  Fax: 813.273.4396

WWW.MFMLEGAL.COM
EMAIL: INFO@MFMLEGAL.COM

625 Court Street, Suite 200
P.O. Box 1669 (33757)
Clearwater, FL 33756
727.441.8966  Fax: 727.442.8470

## QUI TAM COMPLAINT – TO BE FILED UNDER SEAL

April 25, 2019

**United States District Court**
**Fort Lauderdale Division**
U.S. Federal Building and Courthouse
299 East Broward Blvd. #108
Fort Lauderdale, FL 33301

> **Re:** **United States *ex. rel.* William Zubkoff, et al., v. Plaza Health Network a/k/a Hebrew Homes Health Network, Inc.**

Dear Clerk:

In connection with our representation of William Zubkoff, Joyce Galbut, and Henry Matos (the "Whistleblowers") related to the filing of a *qui tam* (whistleblower) action on behalf of the Whistleblowers, the United States of America and the State of Florida, against Plaza Health Network a/k/a Hebrew Homes Health Network, Inc., enclosed with this letter in a sealed envelope please find the following:

1. Qui Tam Complaint – **to be filed under seal**;
2. Civil Cover Sheet;
3. Our firm's check in the amount of $400 for the filing fee; and
4. A thumb drive containing .pdf versions of the Complaint and Cover Sheet.

Please provide a fee receipt and a file-stamped copy of the Complaint to the courier.  We are filing via paper form as opposed to ECF because this matter is a *qui tam* action that is required by federal statute to be filed under seal.  Should you have any questions or concerns, please contact our office immediately.

Sincerely,

MACFARLANE FERGUSON
& MCMULLEN

*Noel P. McDonell*

Noel P. McDonell
*Signed in her absence to avoid delay*